UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Petitioner,<br><br>    v.<br><br>WEN-BING SOONG,<br><br>    Respondent. | Case No. 13-cv-04088-EMC<br><br>Case No. 13-cv-04089-EMC<br><br>**ORDER DENYING PETITIONER'S MOTION TO REDUCE CIVIL CONTEMPT FINES TO JUDGMENT, AND DISMISSING RESPONDENT'S MOTION FOR SANCTIONS TO BE DETERMINED AS MOOT**<br><br>Docket Nos. 68, 70 (C-13-4088) |
| UNITED STATES OF AMERICA,<br><br>    Petitioner,<br><br>    v.<br><br>HSIN-JUNG SHIRLEY SOONG,<br><br>    Respondent. | Docket Nos. 65, 67 (C-13-4089) |

## I. INTRODUCTION

These cases arise out of a tax dispute involving Respondents Wen-Bing Soong and Hsin-Jung Shirley Soong. During the proceedings, the Soongs were held in contempt for failing to produce documents pursuant to an earlier order of this Court. Docket No. 49.[1] The Court imposed a charge of $500 per person per day ($1000 per day collectively as a couple) for non-compliance. The Soongs subsequently settled with the IRS, resolving their underlying tax liability. After the settlement, the Soongs filed a motion for entry of a final sanction order, asking

---

[1] Most documents in this case have been filed in the dockets for both cases against the Soongs, C-13-4088 and C-13-4089. Citations to the docket in this Order refer to the docket for C-13-4088.

the Court to limit the amount of sanctions owed under the contempt order to "not more than $70,000." Docket No. 68 ("Soong Motion"). In response, the government filed a motion to reduce civil contempt fines to judgment, asking the Court to require payment of $258,000 for each Respondent, reflecting the total amount of sanctions the government contends accrued while the contempt order was in effect. Docket No. 70 ("Gov't Motion"). Following a hearing, the Court directed the parties file supplemental briefs addressing the question whether the Court could impose *any* sanctions in light of the Ninth Circuit's decision in *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 626 (9th Cir. 2016). Having reviewed the parties' submissions, the Court concludes that *Shell Offshore* prohibits the Court from collecting sanctions against the Soongs in the circumstances of this case. Accordingly, the Court **DENIES** the government's motion and **DISMISSES** the Soongs' motions as moot.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On September 4, 2013, the government filed petitions to enforce IRS summonses in each of these cases. Docket No. 1. The summonses sought production of numerous documents from the Soongs. The Court issued an order granting the petitions on March 28, 2014. Docket No. 43. After the Soongs unsuccessfully appealed that order, the government moved for an order finding them in contempt for failing to produce the records sought in the summonses. Docket No. 49. On September 3, 2015, the Court granted the motion. Docket No. 57. Noting that there "is no dispute that the Soongs . . . have not produced any documents since this Court issued its order" granting the IRS petitions to enforce the summonses, the Court found the Soongs in contempt and imposed a fine of $500 per person per day ($1000 per day collectively as a couple) for each day they remained out of compliance with the Court's order. *Id.* at 2. The fines began accruing on September 11, 2015. The Court subsequently denied the Soongs' motions to stay the contempt order. Docket No. 59.

The parties began settlement discussions following the entry of the contempt order, and finally reached an oral agreement in September 2016. That agreement was reduced to writing in November 2016; the written closing agreement did not address the Soongs' liability for sanctions under the contempt order. *See* Docket No. 74-1 ¶ 11. On February 6, the Soongs tendered

1  payment of $1,700,000 to discharge their underlying tax liability. On February 8, 2017, the IRS
2  countersigned Form 906, which had the effect of finalizing the settlement and terminating the
3  proceedings against the Soongs. *See* Gov't Motion at 3. The parties filed the instant motions
4  seeking to resolve the sole outstanding issue of the sanctions owed under the Court's contempt
5  order shortly thereafter.

### III. DISCUSSION

"A court's contempt powers are broadly divided into two categories: civil contempt and criminal contempt." *Shell Offshore*, 815 F.3d at 628. "The purpose of civil contempt is coercive or compensatory, whereas the purpose of criminal contempt is punitive." *Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*, 539 F.3d 1039, 1042 (9th Cir. 2008). "Further complicating matters, it is possible for sanctions that were initially imposed for a civil, coercive purpose to change over time; indeed, civil coercive contempt may eventually evolve into criminal contempt. . . . This is because, in order to categorize the contempt properly, a court must look to the purpose of the contempt at the time it is *enforced,* rather than at the time it is *imposed.*" *Shell Offshore*, 815 F.3d at 629-30.

In *Shell Offshore*, the Ninth Circuit joined with a number of other courts in stating that "the 'general rule' requires that '[i]f a civil contempt order is coercive in nature . . . it is mooted when the proceeding out of which it arises terminates.'" *Id.* at 630 (quoting *Ohr ex rel. Nat'l Labor Relations Bd. v. Latino Exp., Inc.*, 776 F.3d 469, 478–79 (7th Cir. 2015) (alterations in original)). As the court explained, the reason for this rule is that once the underlying proceeding has terminated "there is no longer anything left to coerce. Instead, enforcing the sanctions could only serve to punish the contemnor. . . . Thus, once the underlying injunction has been terminated and the contemnor can no longer purge its contempt through compliance, the contempt becomes criminal." *Id.* at 631. Because criminal contempt cannot be imposed without the full panoply of due process protections owed to any criminal defendant, *see Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994), "in cases where the underlying proceeding has been rendered moot, the coercive contempt proceeding must be vacated in order to avoid a due-process violation." *Shell Offshore*, 815 F.3d at 631.

*Shell Offshore* involved a coercive contempt order that had been issued against environmental activists from Greenpeace who suspended themselves from a bridge in an effort to block a Shell Offshore vessel involved in Arctic oil drilling. The district court had previously issued a preliminary injunction prohibiting such actions. Accordingly, after the activists violated the injunction, the court found them in contempt and imposed a coercive sanctions order with "a progressively increasing schedule of fines against Greenpeace: $2,500 for each hour in contempt during the first day; $5,000 per hour during the second day; $7,500 per hour during the third day; and $10,000 per hour thereafter." *Id.* at 627. The activists remained out of compliance with the contempt order for seven hours.

By the time the Ninth Circuit considered the issue, the preliminary injunction had expired and would not be renewed. Accordingly, the Court held that the district court could not enforce the sanctions order, because "there is no longer anything left for the district court to coerce Greenpeace to do. Enforcing the fee-schedule monetary sanction would only serve to punish Greenpeace for its past contumacious actions. Accordingly, the pending contempt proceedings must be vacated." *Id.* at 631.

The present case is precisely analogous. Neither party disputes that the Court's contempt order in this case was coercive – it was intended to coerce the Soongs into producing the documents called for the IRS summonses. Similarly, neither party disputes that, when the Soongs paid the amount owed under the settlement and the IRS countersigned Form 960, the underlying dispute that justified the sanctions order was terminated. Under *Shell Offshore*, the Court's continued enforcement of the sanctions order by requiring payment "would only serve to punish [the Soongs] for [their] past contumacious actions," thus leading to a potential due-process violation. Given this clear authority, the Court concludes that the contempt order against the Soongs must be vacated.

The government contends that *Shell Offshore* is inapplicable in this case because this case does not involve an injunction that had expired or been terminated. *See* Docket No. 80 ("Gov't Supp. Br.") at 2. But nothing in *Shell Offshore* suggests that its reasoning is limited to the context of injunctions. To the contrary, the opinion consistently uses broad language, describing its

4

holding as a "general rule" and stating that "in cases where the *underlying proceeding* has been rendered moot, the coercive contempt proceeding must be vacated in order to avoid a due-process violation." *Shell Offshore*, 815 F.3d at 631 (emphasis added).

The Court recognizes that this is, in many ways, a counterintuitive result. First, the government represents that it is the standard practice for courts to require payment of fines accumulated under coercive contempt orders even after the underlying dispute has been resolved. *See* Gov't Supp. Br. at 3. This practice makes sense, because if a court cannot enforce a contempt order after the underlying dispute has been resolved, then the order loses much of its coercive effect. Indeed, the Government is correct that this rule likely creates a perverse incentive for contemnors *not* to come into compliance with a court order, assuming that a resolution of the underlying dispute through settlement or otherwise is on the horizon. The greater the fines that have accumulated, the stronger this disincentive will be. Moreover, as some courts have recognized, this rule creates an inconsistency between the different sanctions available to a court. For instance, as an alternative to fines, a court can coerce compliance with its orders through imprisonment. In such a case, if a contemnor frees himself through compliance "[i]t is clear that, though the imprisoned contemnor is released from jail, he did not escape the consequences of his contempt. He has already 'paid,' and cannot be given back his days lost in jail; compliance merely ends his jail time." *Occupational Safety & Health Admin. v. All-Feed Processing & Packaging Inc.*, No. 11-MC-1054, 2012 WL 1029659, at *5 (C.D. Ill. Mar. 26, 2012). If, on the other hand, the Court imposes a fine, and the contemnor ultimately resolves the underlying dispute, then he will have escaped the consequences of his contempt altogether.

The Court is mindful of the force of these considerations, but the holding of *Shell Offshore* is clear. Absent some further clarification from the Ninth Circuit, this Court is bound to follow its directive. Because the underlying dispute in this case has terminated, the Court concludes that it must vacate its prior contempt order. Accordingly, the Court **DENIES** the government's motion to reduce the civil contempt fines to judgment, and **DISMISSES** the Soongs' motions as moot.

///

///

This order disposes of Docket Nos. 68 and 70 in C-13-4088 and Docket Nos. 65 and 67 in C-13-4089.

**IT IS SO ORDERED**.

Dated: June 20, 2017

_____
EDWARD M. CHEN
United States District Judge